IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LOWE'S HOME CENTERS INC.,

        Plaintiff,

v.                    //   CIVIL ACTION NO. 1:12CV72
                                (Judge Keeley)

THF CLARKSBURG DEVELOPMENT TWO,
LLC, and MICHAEL H. STAENBERG,

        Defendants.

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 180], AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 182]

Pending before the Court are the motion for summary judgment (dkt. no. 180), filed by the defendants, THF Clarksburg Development Two, LLC ("THF") and Michael H. Staenberg ("Staenberg") (collectively, the "defendants"), and the motion for partial summary judgment (dkt. no. 182), filed by the plaintiff, Lowe's Home Centers, Inc. ("Lowe's"). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the defendants' motion for summary judgment, and **DENIES** Lowe's motion for partial summary judgment.

## I. FACTUAL BACKGROUND

THF owns a large commercial real estate development, known as the Newpointe Plaza Shopping Center ("Newpointe"), located in Clarksburg, West Virginia. (Dkt. No. 3). On January 30, 2002, THF and Lowe's entered into two agreements. In the first, a ground

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

lease, THF agreed to lease a portion of the Newpointe land to Lowe's (the "Lowe's Tract"). (Dkt. No. 3-2). In the second, the Site Development Agreement (the "SDA"), THF agreed to develop the Lowe's Tract and Lowe's agreed to compensate THF $4,087,154 for the work. (Dkt. No. 3-3).

Pursuant to the SDA, THF's duties included, among other things, surface and subsurface compaction, clearing and grading, and providing a storm sewer system. Id. Significantly, Staenberg, the managing partner and 50% owner of THF (dkt. no. 182-22), personally guaranteed THF's performance of its duties under the SDA, as well as its payment of any costs and attorneys' fees incurred by Lowe's to enforce the SDA. (Dkt. No. 3-3). The warranty provision in Article VIII of the SDA states as follows:

> [THF] hereby warrants and represents to Lowe's that all
> Site Improvement Work shall be free from defects of every
> kind and nature for a period of at least one (1) year
> after the date of opening of Lowe's building on the
> Lowe's Tract to the public, and that provided that Lowe's
> gives Developer notice of any such defects within two (2)
> years after the date of the opening of Lowe's building on
> the Lowe's Tract, [THF] shall cause such defects to be
> repaired, including the replacement of any Site
> Improvement Work, and including repair and replacement of
> other property which is required as a result of defects
> in the Site Improvement Work, without cost to Lowe's.
> After such notice of any defects is given, any such
> repair or replacement shall be commenced within ten (10)

LOWE'S HOME CENTERS V. THF CLARKSBURG DEV. TWO, ET AL.   1:12CV72

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

> days after demand and shall be pursued diligently to
> completion.  [THF] shall be responsible for making such
> repair or replacement, without regard (unless the need
> for repair or replacement results solely from the
> negligent or intentionally wrongful acts of Lowe's, its
> agents or contractors) for the reason that such repair or
> replacement is necessary.  Nothing contained herein shall
> limit any other obligation of Site Improvement Work in a
> good and workmanlike manner in compliance with all
> applicable laws, rules, regulations, ordinances, codes
> and [THF's] responsibility to repair latent defects,
> which obligations shall not be limited by the time
> periods or notice requirements set forth above.[1]

Id.  Article XII specifies that "[a]ll notices . . . must be in

writing and must be delivered personally or by nationally

recognized overnight courier or sent by United States certified

mail . . . to the parties at the respective addresses."  Id.

Finally, Article VI of the SDA required THF to certify to

Lowe's that the Lowe's Tract had been "completed pursuant to the

Site Improvement Plans and that the location of the building

corners and elevation of the [Lowe's Tract] subgrade complies with

the tolerances specifically set forth in the Site Improvement

Plans."  Id.  Accordingly, on April 9, 2002, THF's geotechnical

---

[1] THF also provided Lowe's with a separate Site Improvement Work
Warranty (dkt. no. 3-3 at 42), which contained nearly the same language
as the warranty in the SDA.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

engineer, CTL Engineering of West Virginia, Inc. ("CTL"), provided Lowe's with a geotechnical certification stating the following:

> I [CTL] certify that the building pad/limits for the above referenced project, has [sic] been constructed in accordance with the Geotechnical Investigation prepared by CTL Engineering date, 10/23/01, and Lowe's Specifications, dated 07/10/01. All earth cut and fills have been installed competently, properly and have been compacted under the supervision of the below certifying Geotechnical Engineer. The building pad/limits has [sic] been acceptably prepared to support the proposed construction. A final report containing a description of this grading work, on-site recommendations and the results of testing and inspections has been prepared and is dated 10/23/01.

(Dkt. No. 3-3 at 24).

The October 23, 2001 report referenced in the geotechnical certification contained CTL's findings from a subsurface investigation it had performed at THF's request. That report concluded that "dynamic compaction has been completed throughout the entire building footprint." (Dkt. No. 187-6 at 6). In reaching this conclusion, CTL relied on a November 3, 2000 map drawn by THF's project engineer, Wolverton & Associates ("Wolverton"). (Dkt. No. 187-4 at 11). The report further provided that "[s]hould layout of the proposed structure be changed from those used in preparing this report, the Soils Engineer should

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

be notified to make the necessary modifications in our recommendations to account for the changed conditions." (Dkt. No. 187-6 at 10).

After THF purported to deliver the developed Lowe's Tract to Lowe's on April 15, 2002, Lowe's constructed its store on a revised site plan prepared and delivered by Wolverton to Lowe's on April 8, 2002. The Newpointe store opened for business in January, 2003. (Dkt. No. 180-3).

Less than two years later, on April 20, 2004, Lowe's sent Staenberg an email notifying him of a "settlement issue . . . which seems to be getting worse." (Dkt. No. 182-15). Lowe's engineer explained that "[i]t is probable [that] foundation failure will worsen and wall movement will continue." Id. According to the email, there had been 1.5" of movement at the rear of the store. Lowe's also notified Staenberg that he and THF had "some responsibility . . . to provide a stabile [sic] subsurface" under the SDA. Id.

Staenberg immediately forwarded Lowe's email to two THF employees, who told Lowe's to "[r]est assured, THF Realty takes our responsibility very serious [sic] . . . and will do everything

possible to identify the problem and accept any obligations we may have accordingly." (Dkt. No. 182-16).  On April 29, 2004, THF sent a follow-up email to Lowe's that reiterated THF's position that "[i]f any failure or damage is due to anything we as landlords are responsible for, rest assured we will pay for the 'evaluation, testing and repairs.'" (Dkt. No. 182-19).  THF's email further advised that "should the failure be related to something caused by the construction of the facility itself, Lowe's will accept financial responsibility." <u>Id.</u>

Following this exchange of emails, both Lowe's and THF employed engineers to determine the cause of the settlement.  On August 25, 2004, THF received a report from one of Lowe's engineering consultants, Triad Engineering ("Triad"), that concluded the problem was "caused by general differential settlement of the fill materials below the structure." (Dkt. No. 189-2).  Additionally, in November 2004, THF received a memorandum from Lowe's other consultant, Fayette Engineering ("Fayette"), which found a 3" elevation difference from the front of the store to the back.  According to Lowe's, Fayette's report confirmed

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Lowe's theory of movement in the fill material.  (<u>Id.</u>; Dkt. No. 189-10).

THF sent the report of its engineering consultant, CTL, to Lowe's on March 22, 2005, in which CTL concluded the settlement was "unrelated to the originally constructed fill and that the area is likely being impacted by some external force."  (Dkt. No. 189-3). After receiving no response to CTL's report, THF sent Lowe's a letter on November 16, 2005, stating: "Since I [THF] have not heard back from you [Lowe's] and our last report eliminated the pad as the cause of the settlement, I will assume that Lowe's is in agreement with our engineer's conclusion." (Dkt. No. 189-4).  For nearly two years, THF received no further communication from Lowe's.

Nevertheless, on August 14, 2007, Lowe's sent THF a letter via UPS explaining that it had delayed its response until its engineers had completed tests designed to determine the cause of the settlement.  (Dkt. No. 182-20).  Lowe's further explained that it "considers the underlying soil failures at the site to be a latent defect to which [THF's] extended warranty applies and hereby puts [THF] on notice regarding that claim."  <u>Id.</u>

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT, AND DENYING**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

THF refused to cure the settlement problems, leading Lowe's to sue THF on April 26, 2012. In its complaint, Lowe's alleged breach of contract (Count I), breach of warranty (Count II), and breach of the covenant of quiet enjoyment (Count III) against THF. It also alleged breach of contract (Count IV) against Staenberg. As relief, Lowe's sought at least $4 million to cover the costs of curing the settlement problems; at least $925,000 to cover engineering costs; at least $210,000 to cover the costs of structural damage to the store; and an award for other fees and costs.

On November 12, 2013, THF and Staenberg filed a motion for summary judgment that argued Lowe's had failed to comply with the SDA's notice requirements, and, as a consequence, its claims for breach of contract and breach of warranty failed. The motion also argued that Lowe's breach of contract claim against Staenberg was time-barred by both the statute of limitations for contracts and the statute of repose. Finally, THF contended that it was entitled to judgment as a matter of law on Lowe's claim for breach of the covenant of quiet enjoyment because there was no genuine dispute as to any material fact regarding abandonment or eviction.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT, AND DENYING**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

In its response to THF's motion, Lowe's argued that it had provided timely notice regarding the settlement, and, alternatively, that the settlement issues constituted "latent defects" that did not require notice.  Lowe's rejected any contention that its claims were time-barred, and asserted there were genuine issues of material fact regarding whether THF had breached the covenant of quiet enjoyment.

Also on November 12, 2013, Lowe's filed a motion for partial summary judgment arguing that it was entitled to summary judgment on its breach of contract and breach of warranty claims.  The defendants responded that genuine factual disputes exist as to the cause of the settlement on the Lowe's Tract, which precludes a grant of judgment as a matter of law.

On March 13, 2014, the Court heard oral argument on the parties' assertions of waiver and estoppel, as well as their theories of liability.  The motions are ripe for decision.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory

answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c)(1)(A), (a).  When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party.  Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted).  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the

evidence must be such that a rational trier of fact could reasonably find for the nonmoving party.  Id. at 248–52.

### III. DISCUSSION

### A. Lowe's Contract & Warranty Claims

As discussed, Article VIII of the SDA required Lowe's to provide notice of claims under the SDA to THF within two years of the store opening.  Furthermore, Article XII of the SDA specified that notice must be written and delivered personally, by a nationally recognized overnight courier or United States certified mail, to THF's St. Louis, Missouri address.[2]  Both the Site Improvement Work Warranty and Staenberg's personal guaranty incorporated the SDA's notice requirements.

It is undisputed that Lowe's did not send written notice of the settlement to THF until August 14, 2007 - more than four years after the Newpointe store opened.  It is likewise undisputed that Lowe's sent actual notice of the settlement to THF via email on

---

[2] At oral argument on March 13, 2014, Lowe's suggested for the first time that formal notice pursuant to the SDA was required only for warranty claims under that provision.  For purposes of this memorandum opinion and order, the Court finds it unnecessary to address that issue.

April 20, 2004 - well within the two-year window prescribed by Article VIII of the SDA.

Despite having received actual notice of the settlement issues, THF maintains that, had it received formal notice, its attorney would have notified the subcontractors and the insurance provider of Lowe's potential claim.  In determining whether a party's substantial compliance with formal notice is sufficient to trigger the counter-party's duties, courts typically weigh the severity of prejudice against the receipt of actual notice.  See, e.g., Engineered Maint. Svcs., Inc. v. United States, 55 Fed. Cl. 637, 642 (Fed. Cl. 2003) (explaining that sufficiency of actual notice and prejudice are two factors in determining whether a party's failure to provide formal written notice, as required by contract, bars that party's claim); City of Valdez v. Valdez Dev. Co., 523 P.2d 177, 182-83 (Alaska 1974) ("We agree with the trial court that this combination of actual notice and lack of prejudice to the city excused Section 707's requirement of written notice.").

Here, THF overstates the prejudice that resulted from Lowe's failure to send formal notice.  After April 20, 2004, THF had all the requisite information it needed to place its subcontractors and

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT, AND DENYING**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

insurance carrier on notice of the settlement issues and potential claims against it under the SDA, the Site Improvement Warranty, and Staenberg's personal guaranty. In fact, THF did notify its geotechnical consultant, CTL, of the settlement even before April 20, 2004. (Dkt. No. 182-16 at 2). Moreover, after THF submitted its claim to its insurer when this litigation ensued in 2012, the carrier denied THF's claim on the basis that THF "had initial notice of this claim in 2004 but failed to notify National Surety at that time." (Dkt. No. 189-5 at 7). Thus, THF's prejudice, if any, due to receiving electronic rather than written notice in April, 2004 is a result of its own inaction, not lack of notice.

Nevertheless, THF urges a strict application of the SDA's notice provisions, in accordance with West Virginia contract law, as a complete bar to Lowe's claims. See, e.g., Syl. Pt. 2, Bethlehem Mines Corp. v. Haden, 172 S.E.2d 126, 126 (W. Va. 1969). That argument, however, fails to account for THF's conduct following its receipt of actual notice in April, 2004, which amounted to a waiver of its contractual right to formal notice.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

"[T]o effect a waiver, there must be evidence which demonstrates an intentional relinquishment of a known right. Waiver may be established by express conduct or impliedly, through inconsistent actions." Ara v. Erie Ins. Co., 387 S.E.2d 320, 323 (W. Va. 1989); see also Little Beaver Enters. v. Humphreys Rys., Inc., 719 F.2d 75, 79 (4th Cir. 1983) ("Like other contract provisions, the requirement of written notice may be waived.  The waiver need not be expressed to be effective; it is sufficient if the acts or conduct of one party evidences an intention to relieve the other party of his duty to strictly comply with the contract terms.").

Upon receipt of Lowe's email, THF could have demanded formal notice under Article XII of the SDA, or simply remained silent and rested on its rights.  Neither of these actions would have demonstrated THF's intent to relinquish its right to formal notice. But rather than pursue either course of conduct, THF responded to Lowe's email, affirming its intent to "do everything possible to identify the problem and accept any obligations [it] may have accordingly."  Moreover, according to THF's own timeline, it hired engineers to inspect the settlement, authorized a survey crew to

check grades, conducted subsurface testing, drilled test borings, hired a piering company, and sent Lowe's updates through November, 2005.  THF thus acted exactly as if it had received formal notice according to Article XII of the SDA.  The efforts it undertook and the expenses it incurred manifested its relinquishment of its right to formal notice, thus constituting waiver.

In its defense, THF points to the SDA's "no waiver" clause, which provides that "[t]he failure to enforce any particular provision of this Agreement on any particular occasion shall not be deemed a waiver by either party of any of its rights hereunder . . . ."  Within the various jurisdictions, there is a real question as to the significance, if any, of no waiver provisions such as this one.  See, e.g., Perry Eng'g Co. v. AT&T Commc'ns, Inc., 998 F.2d 1010 (4th Cir. 1993) (per curiam) (explaining that, under Virginia law, "[l]ike all contractual rights, the rights under the 'no waiver' clause are themselves subject to waiver"); Westinghouse Credit Corp. v. Shelton, 645 F.2d 869, 873-74 (10th Cir. 1981) ("[T]he weight of authority, and the view we think Oklahoma state courts would follow, is that an 'anti-waiver' clause, like any other term in the contract, is itself subject to waiver or

LOWE'S HOME CENTERS V. THF CLARKSBURG DEV. TWO, ET AL.   1:12CV72

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

modification . . . ."); Hovnanian Land Inv. Grp., LLC v. Annapolis Towne Centre at Parole, LLC, 25 A.3d 967, 983 (Md. 2011) ("[A] party may waive, by its actions or statements, a condition precedent in a contract, even when that contract has a non-waiver clause."); see also 13 Williston on Contracts § 39:36 (4th ed. 2013) ("The general view is that a party to a written contract can waive a provision of that contract by conduct despite the existence of a so-called antiwaiver or failure to enforce clause in the contract."). But see, e.g., Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Svcs., Inc., 601 F.3d 1159, 1182 (11th Cir. 2010) (recognizing that Florida courts have consistently enforced anti-waiver clauses).

The Court has not found, and the parties have not cited, any West Virginia cases explicating the state's position on this issue.[3]  When faced with unsettled issues of state law, the Fourth

---

[3] But see Dunbar Hous. Auth. v. Nesmith, 400 S.E.2d 296, 300 (W. Va. 1990) (noting in dicta that, hypothetically, had the subject lease contained a non-waiver provision, the landlord could have accepted late rent without waiving the tenant's breach of the lease terms).  This case merely recognizes that, even in the majority of states that do not enforce no waiver clauses, an exception is made in the context of late payments.  Compare, e.g., Fritts v. Cloud Oak Flooring Co., 478 S.W.2d 8, 14 (Mo. Ct. App. 1972) ("[A] provision that an express condition of a promise or promises in the contract cannot be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective."), with Wade

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Circuit looks to generally accepted principles within the applicable area of law. See Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008) ("[I]f the West Virginia courts have not addressed an issue, we will look to generally accepted principles of insurance law, because we believe that West Virginia's Supreme Court of Appeals would adopt those principles as its own."). Thus, the Court has no choice other than to predict that West Virginia courts would follow the majority of states and hold that no waiver clauses are themselves subject to waiver upon a showing that the party asserting the clause has waived its rights under another provision of the contract.

Despite THF's waiver of its right to formal notice under the SDA, it argues that Lowe's likewise has waived its contractual rights or is estopped from asserting them. After each of the parties had determined that the settlement was caused by the other's fault, THF heard nothing from Lowe's for several months.

---

v. Ford Motor Credit Co., 455 F. Supp. 147, 149 (E.D. Mo. 1978) (enforcing a no waiver clause in the context of late payments under a lease agreement, despite Missouri's general reluctance to do so in other instances). Thus, to the extent the dicta in Dunbar Housing has value, it does not necessarily place West Virginia in the minority of jurisdictions that strictly enforce no waiver clauses.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Therefore, on November 16, 2005, THF sent Lowe's a letter, advising that it would interpret Lowe's continued silence as acquiescence to THF's conclusion that THF was not at fault for the settlement. Lowe's sent no further communications to THF until providing formal, written notice of its claim in August, 2007. THF argues that the twenty-one month period of silence between November, 2005 and August, 2007 resulted in waiver and estoppel of Lowe's rights under the SDA.

For support, THF relies on the Sixth Circuit's decision in Standard Alliance Indus., Inc. v. Black Clawson Co., 587 F.2d 813 (6th Cir. 1978). There, Standard Alliance had purchased a forging machine from Black Clawson. Id. at 816. The machine was installed in October, 1967 and immediately experienced problems. Id. at 817. Standard Alliance sent a letter to Black Clawson in December, 1967, notifying it of the issues. Id. In response, Black Clawson sent repairmen to the Standard Alliance plant, where they worked on the machine for five months until June, 1968. Id. Without further notice to Black Clawson, Standard Alliance filed suit in May, 1969. Id. at 817, 823. Black Clawson argued that the suit was barred because Standard Alliance had given no notice that, after the

repairs, it still considered Black Clawson to be in breach.  Id. at 822.  The Sixth Circuit agreed, holding that, after Black Clawson's employees finished their repair work, additional notice was required before Standard Alliance could file suit.  Id. at 825.

THF's reliance on Standard Alliance is misplaced.  Here, Lowe's did precisely what the Sixth Circuit required: before filing suit, it sent THF additional notice in August, 2007, that it still intended to pursue its claims.  Furthermore, unlike Black Clawson, THF never engaged in repairs.  The Court thus is not persuaded by THF's reliance on Standard Alliance.

Moreover, THF's waiver and estoppel argument incorrectly assumes that it had the power to impose an extra-contractual duty on Lowe's either to respond immediately to THF's November, 2005 letter or otherwise to forfeit its claims.  The SDA granted THF no such power, and Lowe's did, in fact, respond to THF's letter, albeit some twenty-one months later.  In effect, THF attempted to abbreviate the ten-year statute of limitations period simply by sending Lowe's its November, 2005 letter.  Of course, this unilateral attempt to reduce the permissible statutory time period for Lowe's to file suit had no effect.  This leads to the next

issue of whether Lowe's met its obligation to file its complaint within ten years of the accrual of its breach of contract claims.[4]

## B. Statute of Limitations, W. Va. Code § 55-2-6

In their motion, the defendants argue that Count IV of Lowe's complaint, alleging breach of contract against Staenberg, is barred by the ten year statute of limitations applicable to contract claims.[5]  See W. Va. Code § 55-2-6.  Because Lowe's does not dispute the applicability of § 55-2-6, and because Lowe's filed its complaint on April 26, 2012, the sole question is whether Lowe's breach of contract claim accrued before or after April 26, 2002.

Both parties rely on the decision of the West Virginia Supreme Court of Appeals in Gateway Commc'ns, Inc. v. John R. Hess, Inc., 541 S.E.2d 595 (W. Va. 2000), in which the court recognized that five alternative events can trigger the statute of limitations for contracts.  These include (i) "when the breach of the contract

---

[4] Having determined that the SDA's notice requirements do not preclude Lowe's claims, the Court finds it unnecessary to address Lowe's argument that the settlement at its Newpointe store constitutes a latent defect.

[5] The defendants acknowledge that their statute of limitations argument does not apply to Lowe's breach of contract claim against THF because, unlike Staenberg, THF signed a tolling agreement on January 30, 2008.  (Dkt. No. 181).

**LOWE'S HOME CENTERS V. THF CLARKSBURG DEV. TWO, ET AL.   1:12CV72**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

occurs"; (ii) "when the act breaching the contract becomes known"; (iii) "[when] the agreement is to be performed"; (iv) "[when] payment becomes due"; or (v) "when the work is completed."  541 S.E.2d at 599 (internal citations and quotation marks omitted).  In Gateway, the Supreme Court of Appeals explained that, in the context of construction contracts, the date on which the plaintiff discovers the breach does not apply.  See id.  Rather, the breach accrues either when the contractor completes its work under the contract, or when the owner makes its final payment under the contract.  See id.

Here, THF urges the Court to confirm April 15, 2002 as the date on which it completed its work under the SDA.  (Dkt. No. 181). If THF is correct, then Lowe's filed its claim eleven days beyond the expiration of the ten-year limitations period.  There is evidence to support THF's position.  On May 9, 2002, THF sent Lowe's a letter stating: "[W]e delivered your building pad area on April 15."  (Dkt. No. 180-1).  THF argues that its purported delivery of the building pad area establishes that it had completed all its development work.

21

Under Article II of the SDA, however, delivery of the building pad could not occur until Lowe's accepted it. (Dkt. No. 3-3). The undisputed evidence establishes that, after THF attempted delivery on April 15, Lowe's refused acceptance because the pad did not meet its specifications. (Dkt. No. 186-1). Furthermore, THF sent a letter to Lowe's on May 16, 2003, explaining that it was still working to complete the remaining items on Lowe's sitework punchlist. (Dkt. No. 180-5). As late as July 9, 2003, Lowe's informed THF that certain items related to the building pad area remained unfinished. (Dkt. No. 180-6).

Additionally, Exhibit C of the SDA demonstrates that the final 5% of the value of the contract, or $204,357.70, was contingent upon "completion of all Site Improvement Work." (Dkt. No. 3-3). On August 13, 2003, THF sent Lowe's a letter advising that "[a]ll of the punchlist items pursuant to the above-referenced development have been completed. . . . Consequently, please accept this as an invoice for immediate payment on the balance of $204,357.70." (Dkt. No. 180-7). This letter demonstrates not only that THF did not complete its work until the summer of 2003, but also that Lowe's did not make its final payment until approximately the same

LOWE'S HOME CENTERS V. THF CLARKSBURG DEV. TWO, ET AL.  1:12CV72

MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

time.  Thus, there is no factual dispute that the Court can discern as to whether Lowe's breach of contract claim against Staenberg accrued after April 26, 2002.  Accordingly, the statute of limitations does not bar Lowe's breach of contract claim against Staenberg.

## C. Statute of Repose, W. Va. Code § 55-2-6a

THF also argues that Lowe's contract claim against Staenberg is barred by West Virginia's statute of repose.  Under that statute,

> [n]o action, whether in contract or in tort, for indemnity or otherwise, nor any action for contribution or indemnity to recover damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property, or, to recover damages for any injury to real or personal property, or, for an injury to a person or for bodily injury or wrongful death arising out of the defective or unsafe condition of any improvement to real property, may be brought more than ten years after the performance or furnishing of such services or construction: Provided, . . . The period of limitation provided in this section shall not commence until the improvement to the real property in question has been occupied or accepted by the owner of the real property, whichever occurs first.

W. Va. Code § 55-2-6a.

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT, AND DENYING**
**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The statute of repose "limits the time period in which a suit may be filed for deficiencies in the planning, design, or supervision of construction of an improvement to real property to ten years."  Syl. Pt. 1, <u>Gibson v. West Virginia Dept. of Highways</u>, 406 S.E.2d 440, 441 (W. Va. 1991).  Additionally, the statute "contemplates that someone <u>other than the owner of the real property</u> has performed the enumerated activities or services." <u>Stone v. United Eng'g</u>, 475 S.E.2d 439, 448 (W. Va. 1996) (emphasis in original).

Here, it is undisputed that THF is both the owner of the real property, as well as the party that performed the improvements.  As its managing partner and 50% shareholder, Staenberg presumably was responsible for supervising THF's work.  However, with regard to Lowe's breach of contract claim against Staenberg, Lowe's suit is based not on Staenberg's capacity as THF's supervisor but rather as THF's personal guarantor.  Because the claim has nothing to do with Staenberg's role at THF, the repose afforded under § 55-2-6a does not extend to Staenberg for the alleged breach of his personal guaranty.

**D. Covenant of Quiet Enjoyment**

24

Finally, THF contends that it is entitled to summary judgment on Lowe's claim against it for breach of the common law covenant of quiet enjoyment.  In <u>Gaffney v. Stowers</u>, 80 S.E. 501, 501-02 (W. Va. 1913), the West Virginia Supreme Court of Appeals held that,

> [t]o warrant recovery for breach of a covenant for quiet enjoyment, it is necessary to prove the covenantee was in some way denied or refused right to possession of the premises, or evicted therefrom or molested or disturbed as to his possession after having acquired it, by some person having paramount title or a claim of right under some act of the covenantor inconsistent with the right the covenant guarantees.

Moreover, "[e]viction, or the equivalent thereof, seems to be essential to a breach of the covenant for quiet enjoyment." <u>Ford v. Ball</u>, 86 S.E. 562, 564 (W. Va. 1915); <u>see also</u> <u>McClintock v. Fontaine</u>, 119 F. 448, 450 (N.D.W. Va. 1902) ("It is well settled that an eviction is necessary to a breach of the covenants for quiet enjoyment and of warranty.").

Although it is undisputed that Lowe's store remains open for business and it has not been evicted, Lowe's contends that remediation of the settlement at the Newpointe store will necessarily entail its constructive eviction.  The store's market director, Kenneth R. Haines, testified that various parts of the store will have to be shut down for more than 300 days in order to

**LOWE'S HOME CENTERS V. THF CLARKSBURG DEV. TWO, ET AL.   1:12CV72**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

fix the building site pad problem.   (Dkt. No. 186-20).   Even assuming that THF will be required to fix the settlement, Mr. Haines' predictions regarding constructive eviction in the future are insufficient to support a present eviction claim: "No constructive eviction of a tenant by his landlord occurs unless the tenant abandons the premises." Cato v. Silling, 73 S.E.2d 731, 744 (W. Va. 1952); see also Wilkinson v. Searls, 184 S.E.2d 735, 743 (W. Va. 1971).   Because Lowe's has not been evicted and has not abandoned the premises, no breach of the common law covenant of quiet enjoyment has occurred.

**E. Lowe's Motion for Partial Summary Judgment**

The Court turns next to the question of whether Lowe's is entitled to partial summary judgment on liability concerning its claims against THF and Staenberg for breach of contract and breach of warranty.   Counts I and II of Lowe's complaint allege that THF breached the SDA and the Site Improvement Work Warranty, respectively, and Count IV alleges that Staenberg breached his personal guaranty.

After careful review, the Court concludes that there are material questions of fact in dispute surrounding THF's liability

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

for the alleged differential settlement at Lowe's Newpointe store that preclude partial summary judgment. These disputes may include, but are not limited to, whether Lowe's should have constructed its store on the April 8, 2002 site plans after receiving geotechnical certification from CTL that Lowe's knew or should have known erroneously certified a building pad area different from the one specified in the SDA; how much settlement has actually occurred in the various areas of the store, and whether THF is liable for all of it; whether all of the settlement is the result of a defect, latent or otherwise, in THF's site development work; what part of the building pad on which the Newpointe store was built was dynamically compacted; and was the dynamic compaction performed in accord with the terms of the Site Improvement Plans incorporated in the SDA? Again, these may represent only a few of many disputed factual issues that remain unresolved and preclude summary judgment on the liability of THF.

## IV. CONCLUSION

In conclusion, the Court finds that Lowe's failure to send its initial notice of settlement at its Newpointe store to THF in the manner specified in the SDA does not preclude this lawsuit because THF, through its course of conduct, waived its right to formal

notice.  THF, however, is entitled to summary judgment on Lowe's claim for breach of the covenant of quiet enjoyment. Lowe's is not entitled to partial summary judgment on liability because material questions of fact concerning THF's liability remain unresolved and must be decided at trial.  For these reasons, therefore, the Court **GRANTS IN PART** and **DENIES IN PART** the defendants' motion for summary judgment, and **DENIES** Lowe's motion for partial summary judgment.

It is so **ORDERED.**

The Court directs the Clerk of Court to transmit copies of this Order to counsel of record.

DATED: March 18, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE